# EXHIBIT B

# Plaintiff's Complaint

ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Friday, August 05, 2011 4:45:24 PM
CASE NUMBER: 2011 CV 05639 Docket ID: 16361630
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

IN THE MONTGOMERY COUNTY COURT OF COMMON PLEAS, OHIO
CIVIL DIVISION

**RONALD D. SWANEY**
4731 Fawnwood Road
Kettering, Ohio 45429

     Plaintiff

Vs.

**EXPERIAN INFORMATION
SOLUTIONS, INC.**
C/O C T Corp, S/A
1300 E 9th St
Cleveland, Ohio 44114

TRANS UNION LLC
C/O The Prentice-Hall Corporation
System, Inc., S/A
50 West Broad Street, Suite 1800
Columbus, Ohio 43215

EQUIFAX INFORMATION SERVICES LLC
C/O CSC-Lawyers Incorporating Service
(Corporation Service Company), S/A
50 West Broad Street, Suite 1800
Columbus, Ohio 43215

EQUABLE ASCENT FINANCIAL, LLC,
aka Equable Ascent Fncl LLC, aka EAF,
fka Hilco Receivables, LLC
C/O CSC-Lawyers Incorporating Service
(Corporation Service Company), S/A
50 West Broad Street, Suite 1800
Columbus, Ohio 43215

GE MONEY BANK, aka GEMB/Walmart DC,
aka GE Capital/Walmart
C/O GE Consumer Finance, Inc., S/A
950 Forrer Blvd.
Kettering, Ohio 45420

Case No. _____

Judge _____

JC PENNEY CORPORATION, INC.,
aka GEMB/JC PENNEYS, aka GE/JCPenney,
aka GEMB/JCP
C/O CT Corporation System, S/A
1200 South Pine Island Road
Plantation, Florida 33324

FINGERHUT, aka Fingerhut/Metabank,
aka Metabank/Fingerhut
C/O Fingerhut, S/A
6509 Flying Cloud Drv.
Eden Prairie, MN 55344

     Defendants.

---

### COMPLAINT WITH JURY DEMAND ENDORSED HEREON

---

     Now comes Plaintiff, Ronald D. Swaney ("Swaney"), by and through his counsel, and for his Complaint, states and avers as follows:

### PARTIES & FACTS

1.    This case involves an action for damages advanced by an individual consumer, Swaney, against the defendants, for violations of the Fair Credit Reporting Act, and various other state laws.

2.    At all times relevant herein, Plaintiff, Swaney, is and has been an individual, and a resident of Montgomery County, Ohio.

3.    At all times relevant herein, Defendant, Experian Information Solutions, Inc. ("Experian"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

4.    At all times relevant herein, Defendant, Trans Union LLC ("TU"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

5.    At all times relevant herein, Defendant, Equifax Information Services LLC ("Equifax"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

6.    At all times relevant herein, Defendant, Equable Ascent Financial, LLC, aka Equable Ascent Fncl LLC, aka EAF, fka Hilco Receivables, LLC ("EAF") is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

7.    At all times relevant herein, Defendant, GE Money Bank, aka GEMB/Walmart DC, aka GE Capital/Walmart ("GEMB") is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

8.    JC Penney Corporation, Inc., aka GEMB/JC Penneys, aka GE/JCPenney, aka GEMB/JCP ("JCP") is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process. JCP does not have a statutory agent registered with the Ohio Secretary of State, therefore service of process is being made vis-à-vis JCP's registered agent in Florida.

9.    Fingerhut, aka Fingerhut/Metabank, aka Metabank/Fingerhut ("Fingerhut") is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process.

Fingerhut does not have a statutory agent registered with the Ohio Secretary of State, therefore service of process is being made vis-à-vis Fingerhut's registered agent in Minnesota.

10. Defendants have reported derogatory and inaccurate statements and information relating to Swaney and his credit history to third-parties.

11. The inaccurate statements and information include, inter alia, accounts with, and tradeline information furnished by, EAF, GEMB, JCP and Fingerhut.

12. The inaccurate statements and information disseminated by Experian, TU and Equifax also included inaccurate personal identifying information about Swaney, as well inquiries not attributable to Swaney.

13. The inaccurate information reflects negatively upon Swaney, Swaney's credit repayment history, Swaney's credit worthiness, and Swaney's financial responsibility as a borrower.

14. The defendants have been reporting the false and derogatory information through the issuance of inaccurate consumer credit reports that they have disseminated to various credit grantors and/or other persons and/or entities.

15. As a direct and proximate result of the defendants' actions and/or omissions described herein, Swaney has been unable to obtain credit and/or favorable interest rates, including, inter alia, a home loan.

16. As a direct and proximate result of the defendants' actions and/or omissions described herein, Swaney to purchase invest properties.

17. As a direct and proximate result of the defendants' actions and/or omissions described herein has suffered lost income opportunities, including, inter alia, the ability

18.    Swaney has been subjected to debt collection attempts, and one or more of the credit accounts false attributed to Swaney has been assigned to debt collection and/or sold to a debt buyer. With respect to all disputes referenced in this Complaint, supra and infra, as applicable to each and every defendant herein, as part of his letters of dispute therewith, Swaney informed each and every defendant herein that the accounts and/or tradelines on his credit disclosures and/or credit reports were not attributable to him.

19.    With respect to all disputes referenced in this Complaint, supra and infra, as applicable to each and every defendant herein, Swaney was compliant, prompt and responsive to all requests for information and documentation from each and every defendant.

20.    At all times relevant, Swaney has taken additional steps to mitigate his damages by disputing the inaccurate information with both the credit reporting agencies, as well as the furnishers. Other steps include, but are not limited to, causing security and fraud alerts to be placed upon his consumer credit reports.

21.    Between on or before March 2011 and the present time, the EAF account entry and/or tradeline appeared on Swaney's Experian consumer credit report under derogatory status.

22.    On or about April 18, 2011 Swaney submitted a written dispute to Experian, and explained that the alleged EAF debt and/or collection account appearing on his consumer credit report with Experian did not, and does not, belong to him.

23.    The EAF account entry and/or tradeline issued by EAF appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney

by Experian, and as a result of willful or negligent actions and/or omissions of EAF and Experian.

24. Between on or before March 2011 and the present time, the GEMB account entry and/or tradeline appeared on Swaney's Experian consumer credit report under derogatory status.

25. On or about April 18, 2011 Swaney submitted a written dispute to Experian, and explained that the alleged GEMB debt appearing on his consumer credit report with Experian did not, and does not, belong to him.

26. The GEMB account entry and/or tradeline issued by GEMB appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by Experian, and as a result of willful or negligent actions and/or omissions of GEMB and Experian.

27. Between on or before March 2011 and the present time, the JCP account entry and/or tradeline appeared on Swaney's Experian consumer credit report under derogatory status.

28. On or about April 18, 2011 Swaney submitted a written dispute to Experian, and explained that the alleged JCP debt appearing on his consumer credit report with Experian did not, and does not, belong to him.

29. The JCP account entry and/or tradeline issued by JCP appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by Experian, and as a result of willful or negligent actions and/or omissions of JCP and Experian.

Page 6 of 21

30. Between on or before March 2011 and the present time, the EAF account entry and/or tradeline appeared on Swaney's TU consumer credit report under derogatory status.

31. On or about April 18, 2011 Swaney submitted a written dispute to TU, and explained that the alleged EAF debt and/or collection account appearing on his consumer credit report with TU did not, and does not, belong to him.

32. On or about May 27, 2011 Swaney submitted another written dispute to TU, and reiterated that the alleged EAF debt and/or collection account appearing on his consumer credit report with TU did not, and does not, belong to him, and Swaney requested a notation be placed on his TU consumer credit report to reflect the same.

33. The EAF account entry and/or tradeline issued by EAF appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by TU, and as a result of willful or negligent actions and/or omissions of EAF and TU.

34. Between on or before March 2011 and the present time, the GEMB account entry and/or tradeline appeared on Swaney's TU consumer credit report under derogatory status.

35. On or about April 18, 2011 Swaney submitted a written dispute to TU, and explained that the alleged GEMB debt appearing on his consumer credit report with TU did not, and does not, belong to him.

36. On or about May 27, 2011 Swaney submitted another written dispute to TU, and reiterated that the alleged GEMB debt appearing on his consumer credit report with TU did not, and does not, belong to him, and Swaney requested a notation be placed on his TU consumer credit report to reflect the same.

37.    The GEMB account entry and/or tradeline issued by GEMB appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by TU, and as a result of willful or negligent actions and/or omissions of GEMB and TU.

38.    Between on or before March 2011 and the present time, the JCP account entry and/or tradeline appeared on Swaney's TU consumer credit report under derogatory status.

39.    On or about April 18, 2011 Swaney submitted a written dispute to TU, and explained that the alleged JCP debt appearing on his consumer credit report with TU did not, and does not, belong to him.

40.    On or about May 27, 2011 Swaney submitted another written dispute to TU, and reiterated that the alleged JCP debt appearing on his consumer credit report with TU did not, and does not, belong to him, and Swaney requested a notation be placed on his TU consumer credit report to reflect the same.

41.    The JCP account entry and/or tradeline issued by JCP appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by TU, and as a result of willful or negligent actions and/or omissions of JCP and TU.

42.    Between on or before March 2011 and the present time, the Fingerhut account entry and/or tradeline appeared on Swaney's TU consumer credit report under derogatory status.

43. On or about April 18, 2011 Swaney submitted a written dispute to TU, and explained that the alleged Fingerhut debt appearing on his consumer credit report with TU did not, and does not, belong to him.

44. On or about May 27, 2011 Swaney submitted another written dispute to TU, and reiterated that the alleged Fingerhut debt appearing on his consumer credit report with TU did not, and does not, belong to him, and Swaney requested a notation be placed on his TU consumer credit report to reflect the same.

45. The Fingerhut account entry and/or tradeline issued by Fingerhut appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by TU, and as a result of willful or negligent actions and/or omissions of Fingerhut and TU.

46. Between on or before March 2011 and the present time, the EAF account entry and/or tradeline appeared on Swaney's Equifax consumer credit report under derogatory status.

47. On or about April 18, 2011 Swaney submitted a written dispute to Equifax, and explained that the alleged EAF debt and/or collection account appearing on his consumer credit report with Equifax did not, and does not, belong to him.

48. On or about May 27, 2011 Swaney submitted another written dispute to Equifax, and reiterated that the alleged EAF debt and/or collection account appearing on his consumer credit report with Equifax did not, and does not, belong to him, and Swaney requested a notation be placed on his Equifax consumer credit report to reflect the same.

49.     The EAF account entry and/or tradeline issued by EAF appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by Equifax, and as a result of willful or negligent actions and/or omissions of EAF and Equifax.

50.     Between on or before March 2011 and the present time, the GEMB account entry and/or tradeline appeared on Swaney's Equifax consumer credit report under derogatory status.

51.     On or about April 18, 2011 Swaney submitted a written dispute to Equifax, and explained that the alleged GEMB debt appearing on his consumer credit report with Equifax did not, and does not, belong to him.

52.     On or about May 27, 2011 Swaney submitted another written dispute to Equifax, and reiterated that the alleged GEMB debt appearing on his consumer credit report with Equifax did not, and does not, belong to him, and Swaney requested a notation be placed on his Equifax consumer credit report to reflect the same.

53.     The GEMB account entry and/or tradeline issued by GEMB appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by Equifax, and as a result of willful or negligent actions and/or omissions of GEMB and Equifax.

54.     Between on or before March 2011 and the present time, the JCP account entry and/or tradeline appeared on Swaney's Equifax consumer credit report under derogatory status.

55.     On or about April 18, 2011 Swaney submitted a written dispute to Equifax, and explained that the alleged JCP debt appearing on his consumer credit report with Equifax did not, and does not, belong to him.

56.     On or about May 27, 2011 Swaney submitted another written dispute to Equifax, and reiterated that the alleged JCP debt appearing on his consumer credit report with Equifax did not, and does not, belong to him, and Swaney requested a notation be placed on his Equifax consumer credit report to reflect the same.

57.     The JCP account entry and/or tradeline issued by JCP appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by Equifax, and as a result of willful or negligent actions and/or omissions of JCP and Equifax.

58.     Between on or before March 2011 and the present time, the Fingerhut account entry and/or tradeline appeared on Swaney's Equifax consumer credit report under derogatory status.

59.     On or about April 18, 2011 Swaney submitted a written dispute to Equifax, and explained that the alleged Fingerhut debt appearing on his consumer credit report with Equifax did not, and does not, belong to him.

60.     On or about May 27, 2011 Swaney submitted another written dispute to Equifax, and reiterated that the alleged Fingerhut debt appearing on his consumer credit report with Equifax did not, and does not, belong to him, and Swaney requested a notation be placed on his Equifax consumer credit report to reflect the same.

61.     The Fingerhut account entry and/or tradeline issued by Fingerhut appearing on Swaney's consumer credit report arose from debt and/or credit that did not, and does

not, belong to Swaney. Said account entries and/or tradelines were improperly attributed to Swaney by Equifax, and as a result of willful or negligent actions and/or omissions of Fingerhut and Equifax.

62. On or about February 2008 through the present time, Swaney spent hours making telephone calls and writing letters to Experian, TU and Equifax. In said correspondence and communications, Swaney has requested a copy of his consumer credit report from Experian, TU and Equifax, and has denied that the account entries described supra were attributable to him, and has demanded reinvestigation, and has demanded that Experian, TU and Equifax delete the erroneous and derogatory data on his consumer credit report. During that period of time, Swaney had multiple contacts with Experian, TU and Equifax in order to continually dispute the false data on his consumer credit report.

63. Some of inaccurate account entries described supra were sporadically modified and/or eventually deleted by Experian and/or TU and/or Equifax at different times and following different letters of dispute by Swaney, and/or requests submitted via Universal Data Form from the respective furnishers.

64. Between March 2011 and the date that this lawsuit is being filed, Swaney spent hours making telephone calls and writing letters to EAF, GEMB, JCP and Fingerhut to demand that they each respectively correct any false reporting which appeared on Swaney's consumer credit reports, as set forth supra, and to deny that the account and/or debt belonged to him.

65. On or about June 1, 2011, in response to the dispute correspondence that Experian received from Swaney on April 20, 2011, Experian sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data

Page 12 of 21

regarding the EAF account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report until April 2017.

66.    On or about June 1, 2011, in response to the dispute correspondence that Experian received from Swaney on April 20, 2011, Experian sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the GEMB account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report. Upon information and belief, Experian will continue to report the derogatory GEMB tradeline until on or after 2016.

67.    On or about June 1, 2011, in response to the dispute correspondence that Experian received from Swaney on April 20, 2011, Experian sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the JCP account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report. Upon information and belief, Experian will continue to report the derogatory JCP tradeline until on or after 2016.

68.    On or about May 17, 2011, in response to the dispute correspondence that TU received from Swaney on April 20, 2011, TU sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the EAF account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report until June 2017.

69.    On or about May 17, 2011, in response to the dispute correspondence that TU received from Swaney on April 20, 2011, TU sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the GEMB

account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report until June 2017.

70.     On or about May 17, 2011, in response to the dispute correspondence that TU received from Swaney on April 20, 2011, TU sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the JCP account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report until June 2017.

71.     On or about May 17, 2011, in response to the dispute correspondence that TU received from Swaney on April 20, 2011, TU sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the Fingerhut account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report until August 2017.

72.     On or about July 6, 2011, in response to the dispute correspondence that Equifax received from Swaney on April 20, 2011, Equifax sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the GEMB and JCP account entries and/or tradelines had been deleted. Equifax also indicated that the Fingerhut account entry and/or tradeline was not reporting on the Equifax at that time.

73.     On or about July 6, 2011, in response to the dispute correspondence that Equifax received from Swaney on April 20, 2011, TU sent correspondence to Swaney indicating investigation results pertaining to the false and derogatory data regarding the EAF account entry. These results indicated that the derogatory information would remain on Swaney's consumer credit report until May 27, 2018.

74.    As a result of the false derogatory information on Swaney's consumer credit report, he has suffered lost income opportunities and loss of access to credit. This has caused Swaney to suffer financial loss, lost credit opportunities, and serious embarrassment, humiliation and emotional distress.

### FIRST CAUSE OF ACTION: FAIR CREDIT REPORTING ACT

75.    Swaney hereby incorporates all other paragraphs as if fully restated herein.

76.    This claim is for violation of the Fair Credit Reporting Act by Defendants, Experian, TU and Equifax, along with other common law claims.

77.    Experian, TU and Equifax are each a "consumer reporting agency" as defined in the Fair Credit Reporting Act.

78.    Experian, TU and Equifax each issued, assembled, transferred, and published "consumer reports," regarding Swaney, as defined in the Fair Credit Reporting Act.

79.    Experian, TU and Equifax have each continually added, stored, maintained, and disseminated personal and credit data about Swaney which is false, erroneous, and misleading, without employing procedures to insure the maximum possible accuracy of the information posed to Swaney's consumer reports and disseminated the same to third-parties.

80.    Experian, TU and Equifax through each Defendant's actions and inactions, as described herein, caused great and irreparable injury to Swaney.

81.    Experian, TU and Equifax have each continually mis-merged, or otherwise misreported, credit data attributable to other persons with the consumer credit report of Swaney.

82.    Experian, TU and Equifax have each failed to utilize a search algorithm that is capable of distinguishing between persons with different personal identifiers.

83.    Experian, TU and Equifax have each continually posted false and harmful information to Swaney's consumer credit reports without requiring a reasonable number of points of correspondence.

84.    Experian, TU and Equifax have each failed to invoke necessary functions, procedures, or programs designed to insure that false data and/or data attributable to other persons would not post on Swaney's consumer credit report, and would be suppressed from appearing on Swaney's consumer credit report.

85.    Experian, TU and Equifax have each created, maintained, and utilized a credit reporting system that is defective, and does not comply with the Fair Credit Reporting Act, or other laws governing Experian, TU and Equifax's respective actions.

86.    Experian, TU and Equifax have each improperly posted accounts and other data to Swaney's credit files.

87.    Experian, TU and Equifax have each acted with actual malice and/or with willful intent to injure Swaney.

88.    Experian, TU and Equifax have each defamed Swaney by publishing false information regarding Swaney's creditworthiness to third parties.

89.    Experian, TU and Equifax have each invaded Swaney's reasonable expectation of privacy.

90.    Experian, TU and Equifax have each failed in their respective duty to prevent foreseeable injury to Swaney.

91.    Experian, TU and Equifax have each, through its actions and inactions, as described herein, caused great and irreparable harm to Swaney, inter alia, as described herein.

## SECOND CAUSE OF ACTION: CONSUMER SALES PRACTICES ACT

92.  Swaney hereby incorporates all other paragraphs as if fully restated herein.

93.  This claim is for violation of the Consumer Sales Practices Act by Defendants, Experian, TU and Equifax.

94.  At all times relevant, Swaney was a consumer, as defined by the Ohio Consumer Sales Practices Act.

95.  At all times relevant, Experian, TU and Equifax was each supplier, as defined by the Ohio Consumer Sales Practices Act.

96.  At all times relevant, the facts as set forth herein, effect a consumer transaction, as defined by the Ohio Consumer Sales Practices Act.

97.  At all times relevant, each defendant's actions and/or omissions, as forth herein, affected Swaney's access to favorable credit terms, and that was unfair and/or deceptive to Swaney.

98.  At all times relevant, each defendant's violations of the Fair Credit Reporting Act, as set forth herein, was unfair and/or deceptive to Swaney.

99.  At all times relevant, each defendant's violations of common law claims, as set forth in Claim One above, and infra, was unfair and/or deceptive to Swaney.

100.  Experian, TU and Equifax each knew, or should have known, that its actions and/or omissions, as set forth herein, were unfair and/or deceptive to Swaney, but Experian, TU and Equifax did so anyway, and that was unfair and/or deceptive to Swaney.

101.  As a result of the above, among other things, before, during, or after one or more consumer transactions involving or effecting Swaney, Experian, TU and Equifax each committed one or more unfair and/or deceptive acts.

Page 17 of 21

### THIRD CAUSE OF ACTION: FAIR CREDIT REPORTING ACT

102.  Swaney hereby incorporates all other paragraphs as if fully restated herein.

103.  This claim is for violation of the Fair Credit Reporting Act by Defendants, EAF, GEMB, JCP and Fingerhut, along with other common law claims.

104.  EAF, GEMB, JCP and Fingerhut have each willfully and/or negligently violated the provisions of the Fair Credit Reporting Act by willfully and/or negligently failing to comport with the Fair Credit Reporting Act § 1681s-2(b).

105.  EAF, GEMB, JCP and Fingerhut have each defamed Swaney by publishing false information regarding Swaney's creditworthiness to third parties.

106.  EAF, GEMB, JCP and Fingerhut have each invaded Swaney's reasonable expectation of privacy.

107.  EAF, GEMB, JCP and Fingerhut have each failed in its duty to prevent foreseeable injury to Swaney.

108.  EAF, GEMB, JCP and Fingerhut have each, through its actions and inactions, as described herein, cause great and irreparable injury to Swaney.

### FOURTH CAUSE OF ACTION: CONSUMER SALES PRACTICES ACT

109.  Swaney hereby incorporates all other paragraphs as if fully restated herein.

110.  This claim if for violation of the Ohio Consumer Sales Practices Act by Defendants, EAF, JCP and Fingerhut.

111.  At all times relevant, Swaney was a consumer, as defined by the Ohio Consumer Sales Practices Act.

112.  At all times relevant, the facts as set forth herein, effected a consumer transaction, as defined by the Ohio Consumer Sales Practices Act.

113. At all times relevant, EAF, JCP and Fingerhut EAF, JCP and Fingerhut have each displayed actions and/or omissions, as set forth herein, which have affected Swaney's access to favorable credit terms, and that was unfair and/or deceptive to Swaney.

114. At all times relevant, EAF, JCP and Fingerhut's respective violations of the Fair Credit Reporting Act, and other common law claims, as set forth herein, were unfair and/or deceptive to Swaney.

115. EAF, JCP and Fingerhut each knew, or should have known that its actions and/or omissions, as set forth herein, were unfair and/or deceptive to Swaney, but EAF, JCP and Fingerhut did so anyway, and that was unfair and/or deceptive to Swaney.

116. As a result of the above, among other things, EAF, JCP and Fingerhut have each committed one or more unfair and/or deceptive acts before, during , or after, one or more consumer transactions involving or effecting Swaney.

**WHEREFORE**, Plaintiff, Swaney, demands judgment against Defendants, jointly and severally, as applicable in accordance with the allega¬tions set forth above, as deemed just and lawful by the Court; plus, on each claim, litigation costs, interest, reasonable attorney fees, and any and all other legal and equitable relief this Honorable Court deems just and lawful and as follows:

### PRAYER FOR RELIEF

1. On the first claim for violation of the Fair Credit Reporting Act by and Experian, TU and Equifax, jointly and severally, compensatory damages in an amount greater than $25,000.00 to compensate Swaney for his personal damages, statutory damages, punitive damages, in an amount greater than $25,000.00, litigation costs, interest, attorney fees as deemed proper and

Page 19 of 21

lawful by the Court, and any and all other legal and equitable relief this Court deems just and lawful for each violation that may be proven at trial; and

2. On the second claim, for violation of the Consumer Sales Practices Act by Experian, TU and Equifax, jointly and severally, $200.00 statutory damages, or three times actual damages, whichever is greater, and other damages, remedies, and relief, including non-economic damages, litigation expenses, interest, and attorney fees as deemed proper and lawful by the Court, for each and every violation that may be proven at trial; and

3. On the third claim, for violation of the Fair Credit Reporting Act by EAF, GEMB, JCP and Fingerhut, compensatory damages in an amount greater than $25,000.00 to compensate Swaney for his personal damages, statutory damages, punitive damages, in an amount greater than $25,000.00, litigation costs, interest, attorney fees as deemed proper and lawful by the Court, and any and all other legal and equitable relief this Court deems just and lawful for each violation that may be proven at trial; and

4. On the fourth claim, for violation of the Consumer Sales Practices Act by EAF, JCP and Fingerhut, $200.00 statutory damages, or three times actual damages, whichever is greater, and other also damages, remedies, and relief, including non-economic damages, litigation expenses, interest, and attorney fees as deemed proper and lawful by the Court, for each and every violation that may be proven at trial.

**Plus**, on each and every claim, expenses of suit and litigation, interest from the date the contract was consummated, reasonable attorney fees; plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Page 20 of 21

## JURY DEMAND

Pursuant to Rule 38(b) of the Rules of Civil Procedure, a trial by jury composed of the maximum number of jurors permitted by law is hereby demanded by the Plaintiff Ronald D. Swaney.

Respectfully submitted,

_/s/ Amy L. Wells_
Amy L. Wells        (0078247)
WELLS LAW OFFICE, INC.
7925 Paragon Road, Suite 101
Dayton, Ohio 45459
Tel: (937) 435-4000
Fax: (937) 435-1510
AWells@OhioConsumerHelp.com
www.OhioConsumerHelp.com
Trial Counsel for Plaintiff